Paul S. Doherty, III, Esq. (PD1173)
pdoherty@hdrbb.com
**HARTMANN DOHERTY ROSA
BERMAN & BULBULIA, LLC**
65 Route 4 East, Suite 6
River Edge, NJ 07661
(201) 441-9056
-and-
110 Wall Street, 11th Floor
New York, New York 10005
(212) 344-4619
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PETER CAMPBELL and MICHAEL BERKLEY,<br><br>Plaintiffs,<br><br>v.<br><br>THALES FUND MANAGEMENT, LLC, THALES FUND MANAGEMENT, LLC DEFERRED COMPENSATION PLAN, MAREK FLUDZINSKI, KEVIN ERSHOV and MOLLY ROGERS<br><br>Defendants. | CIVIL ACTION NO.: 10 Civ. 3177 (JSR)<br>ECF CASE<br><br>Civil Action<br><br>**AMENDED COMPLAINT<br>AND JURY DEMAND** |

Plaintiffs Peter Campbell and Michael Berkley (collectively "Plaintiffs"), by way of Amended Complaint in the above-captioned matter, hereby allege and say:

1. Plaintiff Peter Campbell ("Campbell") is an individual who resides in Wyckoff, New Jersey.

2. Plaintiff Michael Berkley ("Berkley") is an individual who resides in New York City.

3. Upon information and belief, Defendant Thales Fund Management, LLC ("Thales") is a limited liability company that maintains its principal place of business at 140 Broadway, 45th Floor, New York, NY 10005. Thales operates a hedge fund. Thales offered its employees deferred compensation benefits through the defendant Thales Fund Management, LLC Deferred Compensation Plan ("Plan"). Upon information and belief, Thales is a Plan Administrator, and/or Plan fiduciary, and/or trustee of the Plan.

4. Defendant Marek Fludzinski ("Fludzinski") is the founder and Chief Executive Officer of Thales. Defendant Kevin Ershov ("Ershov") is the Chief Investment Officer of Thales. Defendant Molly Rogers ("Rogers") is the Director of Administration of Thales. Upon information and belief, Fludzinski, Ershov and Rogers are members of Thales' Deferred Compensation Committee, and/or the Plan Administrator(s), and/or Plan fiduciaries, and/or trustees of the Plan. Thales, the Plan, Fludzinski, Ershov and Rogers are collectively referred to herein as "Defendants".

## JURISDICTION AND VENUE

5. This is a Complaint for violations of the federal Employee Retirement Income Security Act of 1974, as amended ("ERISA"). Accordingly, this Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). This Court possesses supplemental jurisdiction over Plaintiffs' state law and common law claims.

6. Venue is proper under 28 U.S.C. § 1391 because all of the defendants transact business in and are subject to personal jurisdiction in this judicial district. Furthermore, venue is proper under 29 U.S.C. § 1132(e)(2) because the Plan is administered in New York, NY.

## FACTUAL BACKGROUND

7. Campbell and Berkley became employees of Thales in or about 2007. Campbell, Berkley and a third employee named A. Aadel Shaaban ("Shaaban") were part of an event-driven trading group that was supervised by Tom Weekley ("Weekley"). In turn, Weekley reported to Fludzinski.

8. During 2007, the event-driven trading group generated approximately $75 million in profits for Thales' investors and accordingly Thales Fund Management. As a result, Campbell, Berkley and the other members of the group were all eligible for substantial additional compensation over and above their base salaries.

9. In early 2008 Campbell received a bonus of $300,000.00 for his efforts in 2007 and Berkley received a $400,000.00 bonus.

10. Notwithstanding the outstanding performance of the event-driven trading group, during late 2007 and early 2008 Thales was struggling financially and a number of Thales' investors were making redemption demands. As a result of its financial woes, Thales forced Campbell and Berkley to defer a portion of their bonuses. Specifically, Thales insisted that Campbell defer at least two thirds (66.67%) of his bonus and Thales insisted that Berkley defer one half (50%) of his bonus.

11. Thales also insisted that Weekley and Shaaban defer a portion of their 2007 bonuses.

12. In order to induce the members of the event-driven group to defer more of their 2007 bonus compensation, in early 2008 Fludzinski told Weekley (in the presence of Shaaban) that the deferred bonus compensation would be rolled over into a new event-driven fund that would be affiliated with Thales and operated by the other

3

members of the event-driven group. Based on the representation of Fludzinski to Weekley -- which Weekley repeated to Plaintiffs at Fludzinski's direction in accordance with the chain of command at Thales -- in or about February 2008 Campbell deferred his entire 2007 bonus (i.e., $300,000.00). In or about February 2008 Berkley deferred one-half (i.e., $200,000) of his bonus, which sum represented the minimum amount insisted upon by Thales.

13. When Campbell and Berkley deferred this compensation, Weekley advised Plaintiffs that Thales would pay the deferred compensation on January 1, 2010. Weekley further advised Plaintiffs that the deferred compensation would only be forfeited if Plaintiffs voluntarily terminated their own employment before January 1, 2010. Upon information and belief, Weekley made these representations to Plaintiffs based upon representations made to Weekley by Fludzinski and/or Ershov.

14. Because of Thales' financial woes, in or about February 2008 Berkley confirmed with Rogers that if he was terminated without cause prior to January 1, 2010, Berkley would not forfeit his deferred compensation and that the monies would be invested in a money market account and be payable on January 1, 2010. Rogers referred Berkley to the Deferred Compensation Plan, which provides that that upon termination of employment the deferred compensation shall be deemed to be invested in a money market account and that the terminated employee shall be entitled to earlier payments upon separation from service:

Section 4.3 Irrevocability of Deferral Elections.

> Once a Deferred Compensation Agreement, properly executed, is received by the Committee, the elections of the Participant shall be irrevocable; . . . subject to

4

permissible earlier payments, if so elected, upon the separation from service of the Participant from the Employers and/or a Change in Control.

Section 4.6 Hypothetical Investment Vehicles.

. . . Notwithstanding the foregoing, following a Participant's termination of employment for any reason, such Participant's Deferred Compensation Account shall be deemed invested in a three month money market index fund.

15. Thales closed the event-driven trading group's strategy in or about March 2008. At that time, Berkley asked Rogers where his deferred compensation would be invested. After she checked with Fludzinkski and Ershov, Rogers responded that it would be invested in a money market account until it could be rolled over into the new fund to be operated by Plaintiffs. Berkley relayed his communications with Rogers to Campbell, who also relied on Rogers' statements. At no point was it made clear to Berkley or Campbell that their deferred compensation was invested in anything other than a money market account after March 2008.

16. After the event-driven trading strategy was closed, Campbell and Berkley remained employed by Thales, but their salaries were paid for by Weekley. Contrary to Fludzinski's prior representations, Thales never started a new fund to be operated by Plaintiffs (and the other members of the event-driven group) as agreed to by all parties.

17. Thales did not provide Plaintiffs with a copy of the Deferred Compensation Plan document until in or about April of 2008.

18. In August 2008, approximately six months after Campbell and Berkley were awarded their 2007 bonuses, Thales presented identical Deferred

Compensation Agreements to Campbell and Berkley. Campbell and Berkley never executed the Deferred Compensation Agreements.

19. During the first half of 2009, Thales' financial troubles became worse. Upon information and belief, Thales' poor financial condition was exacerbated after Fludzinski paid himself (and other top executives) additional compensation, which effectively rendered Thales insolvent. Indeed, upon information and belief, during this time period Thales' former CFO, Tim Tenaglia, wrote an email wherein Tenaglia expressed concern that a specific transfer to Fludzinski would render Thales effectively insolvent. As a result, Campbell, Berkley and Shaaban began demanding that Thales provide additional information and assurances regarding the status of their deferred compensation.

20. In retaliation for these demands, by letters dated June 22, 2009 Thales terminated Campbell and Berkley without cause.

**Campbell's Demands for Payment**

21. Immediately after his termination, Campbell asked a Thales employee named Molly Rogers to advise him of the status of his deferred compensation. In response, Rogers advised Campbell by email that she would provide this information "after our 2008 audit is completed."

22. Thereafter, Campbell made repeated requests for information regarding the status of his deferred compensation. Each time, Rogers responded by stating words to the effect that Thales was waiting for the audit to be completed. Significantly, even though Campbell already had been involuntarily terminated without

6

cause, Defendants never claimed that Campbell's deferred compensation benefits had been forfeited because he was no longer employed by Thales.

23. Finally, in an email dated December 9, 2009 Campbell again demanded "clarification regarding my Deferred Compensation Account." In response, Rogers advised Campbell as follows: "In reviewing the relevant documents, the Deferred Compensation Committee has determined that the terms of the award were made clear to you at the time of the grant. The vesting was subject to your continued employment on January 1, 2010 and the award was therefore forfeited upon termination of employment."

24. Obviously, Thales' claim that Campbell forfeited his deferred compensation was directly contrary to Campbell's understanding of the parties' agreement. Thales' position also contradicted several prior statements made by Rogers and Ershov. By way of example, in or about August of 2009 (i.e., two months after plaintiffs were terminated) Rogers advised Shabaan that Thales had budgeted the monies needed to pay the deferred compensation due Campbell, Berkley and Shabaan and that all three employees would be paid their deferred compensation in full. In addition, Rogers advised Shaaban that she had spoken with Thales' attorneys and was advised that all Plan participants would be paid their 2007 deferred compensation in January of 2010. Similarly, when Berkley was terminated without cause in June of 2009, Ershov told Berkley in Rogers' presence that Berkley would be paid his deferred compensation on the vesting date (i.e., January 1, 2010).

25. In addition, the position taken by Thales in Rogers' email directly contradicted the terms of Thales' own Deferred Compensation Plan, which provides that upon termination of employment the deferred compensation shall be deemed to be

invested in a money market account and that the terminated employee shall be entitled to earlier payments upon separation from service:

Section 4.3 Irrevocability of Deferral Elections.

    Once a Deferred Compensation Agreement, properly executed, is received by the Committee, the elections of the Participant shall be irrevocable; . . . subject to permissible earlier payments, if so elected, upon the separation from service of the Participant from the Employers and/or a Change in Control.

Section 4.6 Hypothetical Investment Vehicles.

. . . Notwithstanding the foregoing, following a Participant's termination of employment for any reason, such Participant's Deferred Compensation Account shall be deemed invested in a three month money market index fund.

**Berkley's Demands for Payment**

    26.    After his termination, Berkley also asked Molly Rogers to advise him of the status of his deferred compensation. In response, Rogers advised Berkley by email that she would provide this information "when our audits are completed."

    27.    In emails dated September 9, 2009 and September 11, 2009, Berkley made the following further inquiry regarding his deferred compensation: "Can you help me understand what the audit has to do with the distribution date? As I understand it, valuation and distribution date are two totally different concepts. No?" By email dated September 13, 2009, Rogers responded to Berkley's inquiries by stating: "My interpretation is that the two-year vesting period must be met before distribution takes place." During the work week commencing September 14, 2009, Berkley and Rogers exchanged a series of additional emails wherein Rogers advised Berkley that she did not know the distribution date or the value of the deferred compensation to be distributed to

Berkley. Tellingly, Defendants never took the position that Berkley lost the right to receive his deferred compensation by virtue of the involuntary termination without cause of his employment with Thales.

28. Because Berkley did not receive any definitive information from Rogers, by email dated November 30, 2009 Berkley made the following formal request for information to Fludzinski:

> Dear Mr. Fludzinski,
>
> I am writing to request clarification on my deferred compensation. I have yet to be advised on its status and current balance even though I have asked in writing numerous times over the past few months. I believe that my deferred compensation of $200,000.00 is due and payable on January 1, 2010 per my Deferred Compensation Agreement. Please confirm as soon as possible.
>
> Regards,
>
> Michael Berkley.

29. In response, by email dated December 9, 2009 Rogers advised Berkley as follows: "In reviewing the relevant documents, the Deferred Compensation Committee has determined that the terms of the award were made clear to you at the time of the grant. The vesting was subject to your continued employment on January 1, 2010 and the award was therefore forfeited upon termination of employment."

## FIRST COUNT
### (ERISA)

30. Plaintiffs repeat and reallege the allegations set forth above as though set forth herein at length.

31. Upon information and belief, Thales' Deferred Compensation Plan is an employee benefit plan within the meaning of ERISA, 29 U.S.C. § 1002, and the Plaintiffs are qualified participants in the Plan.

32. Defendants have wrongfully denied benefits due Plaintiffs under Thales' Deferred Compensation Plan in violation of ERISA, 29 U.S.C. § 1132(a)(1)(B), and 29 U.S.C. § 1132(a)(3).

33. Defendants have wrongfully denied Plaintiffs information regarding Thales' Deferred Compensation Plan and/or provided false and misleading information regarding the Plan in violation of ERISA, 29 U.S.C. §1132 (c).

34. Defendants failed to provide Plaintiffs with the opportunity for a full and fair review of the denial of Plaintiffs' claims for benefits under the Plan in violation of ERISA, 29 U.S.C. §1133.

35. As a result of the foregoing, Plaintiffs have suffered damages.

36. Plaintiffs are entitled to recover their attorneys' fees and costs of suit if they prevail in this litigation pursuant to 29 U.S.C. § 1132(g).

**WHEREFORE**, Plaintiffs demand that judgment be entered in their favor and against Defendants, awarding to Plaintiffs their compensatory damages, punitive damages, statutory damages and penalties, interest, attorneys' fees, costs of suit and such other relief as the Court deems appropriate.

## SECOND COUNT
### (Breach of the Deferred Compensation Agreement)

37. Plaintiffs repeat and reallege the allegations set forth above as though set forth herein at length.

38. Assuming, arguendo, that the unexecuted Deferred Compensation Agreements presented to Campbell and Berkley govern the parties' relationship, Defendants breached the Deferred Compensation Agreements when they failed to pay the deferred compensation due Campbell and Berkley on January 1, 2010.

39. As a result of Defendants' breach, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiffs demand that judgment be entered in their favor and against Defendants, awarding to Plaintiffs compensatory damages, interest, attorneys' fees, costs of suit and such other relief as the Court deems appropriate.

## THIRD COUNT
### (Breach of Contract)

40. Plaintiffs repeat and reallege the allegations set forth above as though set forth herein at length.

41. Thales agreed to pay deferred bonus compensation to Plaintiffs on or before January 1, 2010. Thales breached the parties' agreement when it failed to pay the deferred compensation due Campbell and Berkley on January 1, 2010.

42. As a result, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiffs demand that judgment be entered in their favor and against Thales, awarding to Plaintiffs compensatory damages, interest, attorneys' fees, costs of suit and such other relief as the Court deems appropriate.

## FOURTH COUNT
### (Promissory Estoppel)

43. Plaintiffs repeat and reallege the allegations set forth above as though set forth herein at length.

44. In or about February and March of 2008, Thales, Fludzinski, Ershov and Rogers represented to Plaintiffs that Thales would pay the deferred bonus compensation due to Plaintiffs on or about January 1, 2010. Thales, Fludzinski, Ershov and Rogers further represented to Plaintiffs that the deferred compensation would only be

forfeited if Campbell or Berkley voluntarily terminated their own employment before January 1, 2010.

45. In reliance upon the promises made by the Defendants, Campbell deferred his entire 2007 bonus and Berkley did not dispute Thales' decision to defer one-half of his 2007 bonus.

46. Contrary to the promises made by the Defendants, Thales subsequently refused to pay the deferred bonus compensation due and owing to Plaintiffs because the Plaintiffs were terminated without cause by Thales before January 1, 2010.

47. As a result, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiffs demand that judgment be entered in their favor and against Thales, awarding to Plaintiffs compensatory damages, interest, attorneys' fees, costs of suit and such other relief as the Court deems appropriate.

## FIFTH COUNT

### (Negligent Misrepresentation)

48. Plaintiffs repeat and reallege the allegations set forth above as though set forth herein at length.

49. In order to induce the Plaintiffs to defer their 2007 bonus compensation, Fludzinski negligently and falsely represented that the bonus compensation would be rolled over into a new fund that would be operated by the members of the event-driven trading group and affiliated with Thales. In reliance upon this representation, Campbell deferred his entire 2007 bonus and Berkley did not dispute Thales' decision to defer on-half of his 2007 bonus.

50. Contrary to Defendants' negligent misrepresentation, in March of 2008 Defendants closed the Plaintiffs' event-driven fund and never deposited the monies into a new fund to be operated by Plaintiffs (and the other members of the event-driven group) as agreed to by all parties.

51. Thales, Fludzinski, Ershov and Rogers also negligently misrepresented to Plaintiffs that their deferred compensation would be invested in a money market account. In reality, Defendants invested Plaintiffs' deferred compensation in a separate fund known as "Leros" that was owned by Fludzinski.

52. Thales, Fludzinski, Ershov and Rogers also negligently and falsely represented to Plaintiffs that the deferred compensation would only be forfeited if Campbell or Berkley voluntarily terminated their own employment before January 1, 2010. Contrary to the representations made by the Defendants, Thales subsequently refused to pay the deferred bonus compensation due and owing to Plaintiffs because the Plaintiffs were terminated without cause by Thales before January 1, 2010.

53. As a result of Plaintiffs' reasonable and justified reliance upon Defendants' negligent misrepresentations, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiffs demand that judgment be entered in their favor and against Defendants, awarding to Plaintiffs compensatory damages, punitive damages, interest, attorneys' fees, costs of suit and such other relief as the Court deems appropriate.

## SIXTH COUNT

### (Fraud)

54. Plaintiffs repeat and reallege the allegations set forth above as though set forth herein at length.

55. In order to induce the Plaintiffs to defer their 2007 bonus compensation, Fludzinski intentionally and falsely represented that the bonus compensation would be rolled over into a new fund that would be operated by the members of the event-driven trading group and affiliated with Thales. In reliance upon this fraudulent misrepresentation, Campbell deferred his entire 2007 bonus and Berkley did not dispute Thales' decision to defer on-half of his 2007 bonus.

56. Contrary to Defendants' fraudulent misrepresentation, in March of 2008 Defendants closed the Plaintiffs' event-driven fund and never deposited the monies

into a new fund to be operated by Plaintiffs (and the other members of the event-driven group) as agreed to by all parties.

57. Thales, Fludzinski, Ershov and Rogers also fraudulently misrepresented to Plaintiffs that their deferred compensation would be invested in a money market account. In reality, Defendants invested Plaintiffs' deferred compensation in a separate fund known as "Leros" that was owned by Fludzinski.

58. Thales, Fludzinski, Ershov and Rogers also fraudulently represented to Plaintiffs that the deferred compensation would only be forfeited if Campbell or Berkley voluntarily terminated their own employment before January 1, 2010. Contrary to the representations made by the Defendants, Thales subsequently refused to pay the deferred bonus compensation due and owing to Plaintiffs because the Plaintiffs were terminated without cause by Thales before January 1, 2010.

59. As a result of Plaintiffs' reasonable and justified reliance on Defendants' fraudulent representations and omissions, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiffs demand that judgment be entered in their favor and against Defendants, awarding to Plaintiffs their compensatory damages, punitive damages, interest, attorneys' fees, costs of suit and such other relief as the Court deems appropriate.

## SEVENTH COUNT

### (Common Law Conspiracy)

60. Plaintiffs repeat and reallege the allegations set forth above as though set forth herein at length.

61. Defendants conspired to commit the wrongful acts detailed above in order to unjustly enrich themselves at the expense of Plaintiffs.

62. As a result, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiffs demand that judgment be entered in their favor and against Defendants, awarding to Plaintiffs their compensatory damages, punitive

damages, interest, attorneys' fees, costs of suit and such other relief as the Court deems appropriate.

                                        **HARTMANN DOHERTY ROSA**
                                        **BERMAN & BULBULIA, LLC**
                                        Attorneys for Plaintiffs

                                        By: _____
                                             Paul S. Doherty, III

Dated: August 2, 2010

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all issues so triable.

                                      **HARTMANN DOHERTY ROSA**
                                      **BERMAN & BULBULIA, LLC**
                                      Attorneys for Plaintiffs

                                      By: /s/ Paul Doherty
                                          Paul S. Doherty, III

Dated: August 2, 2010