**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

PETER CAMPBELL and MICHAEL BERKLEY,

                    Plaintiffs,

v.

THALES FUND MANAGEMENT, LLC,
THALES FUND MANAGEMENT, LLC
DEFERRED COMPENSATION PLAN,
MAREK FLUDZINSKI, KEVIN ERSHOV and
MOLLY ROGERS,

                    Defendants.

---

CIVIL ACTION NO. 10 CIV 3177 (JSR)

Civil Action

---

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

Paul S. Doherty, III (PD 1173)
**HARTMANN DOHERTY ROSA**
**BERMAN & BULBULIA, LLC**
110 Wall Street, 11th Floor
New York, New York  10005
(212) 344-4619
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

    I.    The Complaint States a Claim for Violation of
        ERISA  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

    II.   Plaintiffs' Breach of Contract Causes of Action
        Should Not be Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

    III.  Plaintiffs' Promissory Estoppel Claim Should not
        be Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

    IV.  Plaintiffs' Negligent Misrepresentation and Fraud
        Claims Should not be Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

    V.   Plaintiffs' Conspiracy Allegations Should not
        be Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

## TABLE OF AUTHORITIES

**Case**                                                                      **Page**

*Albers v. The Guardian Life Ins. Co. of Amer.,*
1999 WL 228367, at *3 (S.D.N.Y. 1999) .................................... 12, 13

*Bialy v. Honeywell,*
2006 WL 196378 (W.D.N.Y. Jan. 24, 2006) ................................ 15

*Briarpatch Ltd., LP v. Pate,*
81 F. Supp 2d 509, 516 (S.D.N.Y. 2000) ................................... 24, 25

*Central United States, Southeast and Southwest Areas Pension Fund v. Central*
*Transp., Inc.,*
472 U.S. 599, 570 (1985) ................................................. 10

*Chapman v. ChoiceCare Long Island Term Disability Plan,*
*288 F.3d 506, 609-10* ..................................................... 15

*Cron v. Hargo Fabrics,* Inc.,
91 N.Y. 2d 362, 370 (1998) ............................................... 21, 22

*Daft v. Advest,*
2010 WL 271421, at *2 (N.D. Ohio 2010) .................................. 14

*DeMuria v. Hawkes,*
328 F.3d 704, 706 (2d Cir. 2003) ......................................... 9, 10,
                                                                          18, 24

*Firestone Tire & Rubber Co. v. Bruch,*
489 U.S. 101, 118 (1989) ................................................. 19

*Hahn v. National Westminster Bank,*
99 F. Supp. 275, 279 (E.D.N.Y. 2000) .................................... 10, 11,
                                                                          12, 13

*Holansky v. Prudential Financial,*
2004 WL 1404016, at *2 (N.D. Ill. 2004) .................................. 14

*Holzer v. Prudential Equity Group,*
458 F. Supp.2d 587, 593 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*International Paper Co. V. Suwyn,*
978 F. Supp. 506, 511 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 13

*Jaghory v. New York State Dept. of Educ.,*
131 F.3d 326, 329 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kemmer v. ICI American Inc.,*
70 F.3d 281, 286 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Paneccasio v. Unisource Worldwide, Inc.,*
532 F.3d 101, 108 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Rackson v. Sosin,*
14 Fed. Appx. 23, 24-25 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Reuben H. Donnelly Corp. v. Mark I Marketing Corp.,*
893 F. Supp 285, 290 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*RG Group Inc. v. Horn & Hardart Co.,*
751 F.2d 69, 78 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Scheuer v. Rhodes,*
416 U.S. 232, 236 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Serio v. Wachovia Securities,*
2007 WL 2462626, at *5-7 (D.N.J. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Weisse v. Engelhard Minerals & Chemicals,*
571 F.2d 117, 118, 118 n.1 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Wilkins v. Mason Tenders Dist Council Pension Fund,*
445 F.3d 572, 580 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*York v. Ass'n of the Bar of the City of New York,*
286, F. 3d 122, 125 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

## STATUTES, REGULATIONS AND RULES:

29 U.S.C. §1002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3, 10,
                                                                                                                11, 14

29 U.S.C. §1025  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19, 20

29 U.S.C.§§1051  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

29 U.S.C.§1081  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

29 U.S.C.§1101  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

29 U.S.C.§§1132  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15, 19,
                                                                                                                20

29 C.F.R. § 2510.3-2(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

Federal Rule of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10, 14

## **PRELIMINARY STATEMENT**

Plaintiffs Peter Campbell ("Campbell") and Michael Berkley ("Berkley") respectfully submit this brief in opposition to Defendants' motion to dismiss Plaintiffs' Amended Complaint. Defendants' entire argument is based on the faulty premise that Plaintiffs' claims relate to unvested and unearned bonus income for their work during 2008. This premise is not only contrary to the facts alleged in the Amended Complaint (which are deemed to be true for the purposes of this motion) but also contrary to common sense. In fact, Campbell and Berkley seek to recover substantial bonuses that were earned for work performed in 2007, and which should have been paid by Defendants on or before January 1, 2010.

Campbell and Berkley were part of an event-driven stock trading group employed by Thales Fund Management, LLC ("Thales"). During 2007, Plaintiffs' group generated approximately $75 million in profits for the benefit of Thales and its principals – defendants Marek Fludzinski ("Fludzinski"), Kevin Ershov ("Ershov") and Molly Rogers ("Rogers"). In recognition of this outstanding performance during 2007, Defendants promised in early 2008 to pay Campbell a bonus of $300,000.00 and Berkley a bonus of $400,000.00. Because Thales was struggling financially, however, Thales insisted that Plaintiffs defer their 2007 bonuses. Contrary to the suggestion in Defendants' Preliminary Statement that Plaintiffs are disgruntled former employees who are seeking "something for nothing," in reality Plaintiffs earned the bonuses in 2007 but were forced to await payment to a later date due to the poor performance of others employed by Thales.

Contrary to Defendants' contention in their Supplemental Brief, the Thales Plan did not require Plaintiffs to make the deferral election in 2006 because Section 4.2 of the Plan expressly authorizes the Committee to "permit Awards . . . to be treated as deferrals under the Plan,

including deferrals that may be mandatory as determined by the Committee . . . for administrative convenience". In other words, the Committee may deem any bonus award, including Plaintiffs' 2007 bonuses, as deferred compensation under the Plan. Also Plaintiffs' Complaint and Amended Complaint are not contradictory with respect to Plaintiffs' knowledge of and reliance upon the Plan; rather, the Amended Complaint simply clarifies that the Plaintiffs did not have the Plan *documents* until April 2008 and, therefore, prior to that date they relied on the oral representations of Thales' principals (Fludzinski, Ershov and Rogers) regarding what the Plan said and how it operated.

Defendants' attempt to characterize the bonuses as "unvested" is similarly unavailing and contrary to the alleged facts. Defendants represented to Plaintiffs that the deferred portion of their 2007 bonuses would be rolled over into a new event-driven fund that would be affiliated with Thales, and that the bonus monies would be paid to Plaintiffs on or before January 1, 2010. Further, Defendants represented to Plaintiffs that in the event the Plaintiffs were terminated prior to January 1, 2010, the bonuses would be placed in a money market account and thereafter paid to Plaintiffs. It is clear from these representations that all parties understood and agreed that Plaintiffs' 2007 bonuses vested on the date they were awarded in early 2008.

As set forth in Plaintiffs' Amended Complaint, Plaintiffs are pursuing alternative theories of relief. Plaintiffs have been forced to plead in the alternative because it is not clear at this time whether (1) the bonuses were awarded to Plaintiffs under the Thales Deferred Compensation Plan or (2) whether the bonuses constituted compensation for Plaintiffs' work during 2007 but the payment of the bonuses was deferred simply because Thales lacked the ability and/or willingness to pay the bonuses at the time they were awarded. Under either theory, the facts alleged by Plaintiffs are more than sufficient to overcome Defendants' motion to dismiss.

While Defendants maintain that the Deferred Compensation Plan ("Plan") is not governed by ERISA, the Defendants candidly admit that the second sentence of the Plan provides that "[i]t is intended that the Plan constitute an unfunded 'top hat plan' for purposes of Employee Retirement Income Security Act of 1974, as amended." Further, pursuant to Sections 4.2 and 4.3 of the Plan, it is clear that the Plan contemplates the deferral of income "for periods extending to the termination of covered employment, or beyond" as required by ERISA, 29 U.S.C. § 1002(2)(A).

Under the Plan and general principles of contract law, Defendants were required to pay Plaintiffs their bonuses on or before January 1, 2010. Defendants' reliance on the Deferred Compensation Agreement in an effort to defeat Plaintiffs' contract claim is a red-herring. *First*, the Plan simply does not require Thales' employees to execute a Deferred Compensation Agreement in order participate in the Plan. *Secondly*, Plaintiffs never signed the Deferred Compensation Agreement and, therefore, the terms of the Agreement are not enforceable. *Third*, even assuming the unexecuted Agreement is somehow enforceable, the critical provision of the Agreement – "Upon my termination of employment with the Employers I shall forfeit the unvested portion of my Deferred Compensation Account" -- is susceptible to several interpretations. Contrary to Defendants' position, the most natural interpretation is that Plaintiffs would only forfeit their deferred compensation in the event they voluntarily resigned prior to January 1, 2010. Otherwise, the Defendants could simply avoid paying the deferred compensation by firing the employee shortly before the vesting date. In addition, this interpretation comports with the verbal and written statements made by the Defendants when the bonuses were awarded to Plaintiffs.

- 3 -

Finally, Plaintiffs have adequately pled causes of action for promissory estoppel, fraud, negligent misrepresentation and conspiracy. As set forth in Plaintiffs' Amended Complaint, the Defendants falsely represented to Plaintiffs that their bonuses would be rolled over into a new fund that would be operated by the members of the event-driven trading group and affiliated with Thales. In reliance upon this fraudulent misrepresentation, Campbell deferred his entire 2007 bonus and Berkley did not dispute Thales' decision to defer one-half of his 2007 bonus. In reality, Defendants invested Plaintiffs' deferred compensation in a separate fund known as "Leros" that was owned by Fludzinski.

Accordingly, Defendants' motion to dismiss should be denied.

## STATEMENT OF FACTS

### The Parties

Thales operates a hedge fund in New York City. (Am. Cmplt. ¶ 3). Fludzinski is the founder and Chief Executive Officer of Thales; Ershov holds the title of Chief Investment Officer; and Rogers is Thales' Director of Administration. (Am. Cmplt. ¶ 4).

Thales offered its employees deferred compensation benefits through the Defendant Thales Fund Management, LLC Deferred Compensation Plan ("Thales Plan"). (Am. Cmplt. ¶ 3). Upon information and belief, Fludzinski, Ershov and Rogers are members of Thales' Deferred Compensation Committee. (Am. Cmplt. ¶ 4).

Campbell and Berkley became employees of Thales in or about 2007. (Am. Cmplt. ¶ 7). Campbell, Berkley and a third employee named A. Aadel Shaaban ("Shaaban") were part of an event-driven trading group that was supervised by Tom Weekley ("Weekley"). (Id.). Weekley, in turn, reported to Fludzinski. (Id.).

**Thales Forces Plaintiffs to Defer Their Compensation**

During 2007, the event-driven trading group generated approximately $75 million in profits for Thales' investors and accordingly Thales Fund Management.  As a result, Campbell, Berkley and the other members of the group were all eligible for substantial additional compensation over and above their base salaries.  (Am. Cmplt. ¶ 8).  Specifically, Campbell was awarded a bonus of $300,000.00 for his efforts in 2007 and Berkley was awarded a $400,000.00 bonus.  (Am. Cmplt. ¶ 9).

Notwithstanding the outstanding performance of the event-driven trading group, during late 2007 and early 2008 Thales was struggling financially and a number of Thales' investors were making redemption demands.  Due to its financial woes, Thales insisted that Plaintiffs defer a portion of their bonuses.  Specifically, Thales insisted that Campbell defer at least two thirds (66.67%) of his bonus and Thales insisted that Berkley defer one half (50%) of his bonus.  (Am. Cmplt. ¶ 10).  Thales also insisted that Weekley and Shaaban defer a portion of their 2007 bonuses.  (Am. Cmplt. ¶ 11).  Defendants promised to pay Plaintiffs' deferred compensation on or before January 1, 2010.

**The Individual Defendants Fraudulently Induce Plaintiffs To Defer Their Compensation**

In order to induce the members of the event-driven group to defer more of their 2007 bonus compensation, in early 2008 Fludzinski told Weekley that Plaintiffs' deferred bonus compensation would be rolled over into a new event-driven fund that would be affiliated with Thales and operated by Plaintiffs (and the other members of the event-driven group).  (Am. Cmplt. ¶ 12).  Based on Fludzinski's representation to Weekley -- which Weekley repeated to Plaintiffs at Fludzinski's direction in accordance with the chain of command at Thales -- in February 2008 Campbell deferred his entire 2007 bonus (i.e., $300,000.00) and Berkley deferred

- 5 -

one-half (i.e., $200,000) of his bonus. (Id.). Contrary to Fludzinski's false representation, in or about March of 2008 Thales closed Plaintiffs' event-driven fund and never deposited the monies into a new fund to be operated by Plaintiffs. (Am. Cmplt. ¶¶ 50 & 56).

Weekley advised Plaintiffs that Thales would pay the deferred compensation on January 1, 2010. Weekley further advised Plaintiffs that the deferred compensation would only be forfeited if Plaintiffs voluntarily terminated their own employment before January 1, 2010. Weekley made these representations to Plaintiffs based upon representations made to Weekley by Fludzinski and/or Ershov. (Am. Cmplt. ¶ 13).

Because of Thales' financial woes, in or about February 2008 Berkley confirmed with Rogers that if he was terminated without cause prior to January 1, 2010, Berkley would not forfeit his deferred compensation and that the monies would be invested in a money market account and be payable on January 1, 2010. (Am. Cmplt. ¶ 14). Rogers also referred Berkley to the Deferred Compensation Plan, which provides that upon termination of employment the deferred compensation shall be deemed to be invested in a money market account and that the terminated employee shall be entitled to earlier payments upon separation from service. (Id.). Although Rogers verbally referenced the Plan during this conversation, Thales did not provide Plaintiffs with a copy of the Plan document until April of 2008. (Am. Cmplt. ¶ 17).

**Thales Closes Plaintiffs' Fund and Subsequently Terminates Plaintiffs' Employment**

Thales closed the event-driven trading group's fund in or about March 2008. (Am. Cmplt. ¶ 15). At that time, Berkley asked Rogers where his deferred compensation would be invested. After she checked with Fludzinkski and Ershov, Rogers responded that it would be invested in a money market account until it could be rolled over into the new fund to be operated by Plaintiffs. (Id.). Berkley relayed his communications with Rogers to Campbell, who also

relied on Rogers' statements.  Plaintiffs were never told that their deferred compensation was invested in anything other than a money market account after March 2008.  (Id.).  Approximately six months after Campbell and Berkley were awarded their 2007 bonuses, Thales presented identical Deferred Compensation Agreements to Campbell and Berkley.  (Am. Cmplt. ¶ 18).  Campbell and Berkley never executed the Deferred Compensation Agreements.  (Id.).

During the first half of 2009, Thales' financial troubles became worse.  As a result, Campbell, Berkley and Shaaban demanded that Thales provide additional information and assurances regarding the status of their deferred compensation.  (Am. Cmplt, 19).   In retaliation for these demands, Thales terminated Campbell and Berkley without cause on or about June 22, 2009.  (Am. Cmplt. ¶ 20).

**Campbell's Demands for Payment**

Immediately after his termination, Campbell asked Rogers to advise him of the status of his deferred compensation.  In response, Rogers advised Campbell by email that she would provide this information "after our 2008 audit is completed."  (Am. Cmplt. ¶ 21).  Thereafter, Campbell made repeated requests for information regarding the status of his deferred compensation.  Each time, Rogers responded by stating words to the effect that Thales was waiting for the alleged audit to be completed.  (Am. Cmplt. ¶ 22).  Finally, in an email dated December 9, 2009, Campbell again demanded "clarification regarding my Deferred Compensation Account."  In response, Rogers advised Campbell as follows: "In reviewing the relevant documents, the Deferred Compensation Committee has determined that the terms of the award were made clear to you at the time of the grant.  The vesting was subject to your continued employment on January 1, 2010 and the award was therefore forfeited upon termination of employment."  (Am. Cmplt. ¶ 23).

**Berkley's Demands for Payment**

After his termination, Berkley also asked Rogers to advise him of the status of his deferred compensation.  In response, Rogers advised Berkley by email that she would provide this information "when our audits are completed."  (Am. Cmplt. ¶ 26).  In emails dated September 9, 2009 and September 11, 2009, Berkley made the following further inquiry regarding his deferred compensation: "Can you help me understand what the audit has to do with the distribution date?  As I understand it, valuation and distribution date are two totally different concepts.  No?"  By email dated September 13, 2009, Rogers responded to Berkley's inquiries by stating: "My interpretation is that the two-year vesting period must be met before distribution takes place."  Tellingly, Rogers never took the position that Berkley had lost the right to receive his deferred compensation by virtue of the termination of his employment with Thales.  (Am. Cmplt. ¶ 27).

Because Berkley did not receive any definitive information from Rogers, by email dated November 30, 2009 Berkley made a formal request for information to Fludzinski.  In response, by email dated December 9, 2009 Rogers advised Berkley as follows: "In reviewing the relevant documents, the Deferred Compensation Committee has determined that the terms of the award were made clear to you at the time of the grant.  The vesting was subject to your continued employment on January 1, 2010 and the award was therefore forfeited upon termination of employment."  (Am. Cmplt. ¶¶ 28 & 29).

Thales' claim that Plaintiffs forfeited their deferred compensation was directly contrary to Plaintiffs' understanding of the parties' agreement.  (Am. Cmplt. ¶ 24).  Thales' position also contradicted several prior statements made by Rogers and Ershov (id.) and the terms of Thales' own Deferred Compensation Plan.  (Am. Cmplt. ¶ 25).

- 8 -

## LEGAL ARGUMENT

In reviewing a motion to dismiss, a court must accept all of the plaintiffs' factual allegations as true and draw all reasonable inferences in favor of the plaintiffs. DeMuria v. Hawkes, 328 F.3d 704, 706 (2d Cir. 2003). "The court may not dismiss a complaint unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." Jaghory v. New York State Dept. of Educ., 131 F.3d 326, 329 (2d Cir. 1997) (internal quotation omitted). Because the complaint must allege facts which confer a cognizable right of action, " '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " York v. Ass'n of the Bar of the City of New York, 286 F.3d 122, 125 (2d Cir. 2002) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (alteration in original).

## I.     The Complaint States a Claim for Violation of ERISA

The terms and expressly stated purpose of the Thales Plan establish that it is subject to ERISA. Further, Defendants' failure to pay Campbell and Berkley their bonuses in accordance with the Plan, as alleged in the Amended Complaint, was a violation of its terms and, therefore, actionable under ERISA. Defendants claim that Plaintiffs do not allege that they were participants in an ERISA plan and that they have "retracted their allegations that they deferred their bonuses in reliance on the Thales Plan, and deny that they did." (Def. Supp. Memo of Law at 4). This is a complete mischaracterization of the facts alleged in the Amended Complaint. Defendants also incorrectly assert, without reference to any specific Plan provisions, that the Plan requires participants to make deferral elections in the year before the year in which income is earned. (Def. Supp. Memo of Law at 1, 5-6). This argument is belied by Section 4.2 of the Plan, which states that the Plan Committee "may permit Awards and other amounts to be treated as

deferrals under the Plan, including deferrals that may be mandatory as determined by the Committee...." (LeSueur Decl. Ex. 2 § 4.2).   In other words, the Committee may deem any bonus award, including Plaintiffs' 2007 bonuses, as deferred compensation under the Plan.

## A. In Accordance with its Express Operating Terms and Stated Purpose, the Thales Deferred Compensation Plan is an ERISA Plan

The plain terms of the Thales Deferred Compensation Plan (the "Thales Plan" or "Plan"), as well as its express purpose and design, demonstrate that it is governed by ERISA.  Even assuming arguendo that the exact nature of the Plan is unclear on its face, dismissal is not proper under Federal Rule of Civil Procedure 12(b)(6) because the Court must draw all reasonable inferences in favor of the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. DeMuria, 328 F.3d at 706.

With the passage of ERISA, Congress set out to "assure the equitable character of employee benefit plans and their financial soundness." Central United States, Southeast and Southwest Areas Pension Fund v. Central Transp., Inc., 472 U.S. 559, 570 (1985) (internal quotations and alterations omitted).  ERISA broadly defines the terms "employee pension benefit plan" and "pension plan" as:

> Any plan, fund or program...to the extent that by its express terms or as a result of surrounding circumstances such plan, fund or program...(i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond.

29 U.S.C. § 1002(2)(A).  Courts, therefore, consider the plain language of a plan as well as surrounding circumstances, in particular, the purpose of the plan, to determine whether it qualifies as an ERISA "pension plan." See International Paper Co. v. Suwyn, 978 F.Supp. 506, 511 (S.D.N.Y. 1997); Hahn v. National Westminster Bank, 99 F. Supp.2d 275, 279 (E.D.N.Y.

2000) (considering plan's proclaimed intent to provide bonus compensation in finding it was not an ERISA plan).  Here, the Thales Plan meets the second prong of § 1002(2)(A) because the Plan's terms result in the deferral of income beyond termination of employment at Thales. Therefore, the Plan is governed by ERISA.

Under Sections 4.2 and 4.3 of the Thales Plan, participants can elect to defer payments with respect to a particular fiscal year and can then further elect an additional deferral period "of at least 5 years, subject to permissible earlier payments, if so elected, upon separation from service...." (LeSueur Decl. Ex. 2, §§ 4.2 and 4.3).  The Thales Plan is designed, therefore, to allow participants to indefinitely defer income until retirement or the termination of employment. Moreover, the Thales Plan provides for and addresses such long term deferments of income, stating in Section 4.6 that "following a Participant's termination of employment for any reason" amounts in their "Deferred Compensation Account shall be deemed invested in a three month money market index fund." (LeSueur Decl. Ex. 2 §4.6).  Similarly, Section 5.1 anticipates long-term deferments by providing that "if the Participant's election results in the payment of all or a portion of the Participant's Deferred Compensation Account following the Participant's separation from service from the Employers, the Company may, notwithstanding the Participant's election, pay the Participant's Deferred Compensation Account upon the later of (i) the date or dates elected by the Participant and (ii) the first anniversary of the Participant's termination of employment."

In addition to these express operating terms, the Thales Plan states that: it "is established for the purpose of providing deferred compensation benefits for a select group of management or highly compensated employees of the Employer" and it "is intended that the Plan constitute an unfunded 'top hat plan' for purposes of [ERISA]." (LeSueur Decl. Ex. 2, Introduction).  This

- 11 -

language incorporates the precise definition of a top hat plan under ERISA. See 29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1) (defining a top hat plan as: "a plan which in unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensate employees"). "Top hat plans clearly are subject to ERISA." Kemmer v. ICI Americas Inc., 70 F.3d 281, 286 (3d Cir. 1995). See also, Paneccasio v. Unisource Worldwide, Inc., 532 F.3d 101, 108 (2d Cir. 2008) (noting that while top hat plans are exempt from many provisions of ERISA, they remain subject to reporting and disclosure provisions, and administration and enforcement provisions).

While Defendants attempt to dismiss the Thales Plan's own stated purpose as mere "recitals" that should not "distract" the Court, one of the cases Defendants cites in support of their position that the Thales Plan is not governed by ERISA emphasizes that a plan's "express statement of purpose…is entitled to weight when determining the nature of the plan." Hahn, 99 F. Supp.2d at 279. In fact, in each of the cases Defendants cite as having analogous, non-ERISA plans, the court specifically noted that the stated purpose of the plan was to provide an incentive or bonus compensation to employees. See International Paper Co. v. Suwyn, 978 F.Supp. 506, 511 (S.D.N.Y. 1997) (noting that stated purpose of an executive awards program was to provide incentives for senior management to improve the performance of the company on a long-term basis and to attract and retain employees); Albers v. The Guardian Life Ins. Co. of Amer., 1999 WL 228367, at *3 (S.D.N.Y. 1999) (pointing to bonus agreement's stated purpose to implement an incentive plan in finding it did not constitute an ERISA plan); Hahn, 99 F. Supp.2d at 279 ("Where, as here, the plan proclaims its intent to provide bonus compensation, a pension plan will not be found."). Clearly cognizant of this important distinction, Defendants assert, without citation to the record, that the primary purpose of the Plan is to provide current income to current

- 12 -

employees. (Def. Memo of Law at 12). In fact, the Plan itself contains no such stated purpose. Rather, the Plan's expressly stated purpose is to create a top-hat plan governed by ERISA.

The plans in International Paper, Albers, and Hahn had other important distinctions from the Thales Plan. For example, in Albers, the bonus compensation program granted awards to be paid in three successive annual installments and did not provide for the opportunity to defer income until retirement or termination in the sense contemplated by ERISA, as the Thales Plan does. Rather, in Albers, if the plaintiff happened to retire before all the installments were paid, they would vest and be payable immediately. 1999 WL 228367, at *1. Thus, in Albers, any bonus payment to the plaintiff after his retirement was "merely incidental," id., rather than part of an express provision of the plan providing for the systematic deferral of income for periods beyond the termination of covered employment, as in Sections 4.2 and 4.3 of the Thales Plan.

Moreover, unlike the Thales Plan, the stock award programs in International Paper and Hahn provided for the immediate cancellation of the awards in certain circumstances, such as termination or retirement, necessarily meaning the payments of those benefits would not extend beyond termination. See International Paper, 978 F.Supp at 511-12 ("[I]t is noteworthy that under the ECA if a participating executive were to retire or otherwise terminate employment with International Paper prior to vesting, the restricted stock grant would be canceled immediately. ") The Thales Plan has no such forfeiture provision, and, in fact, provides for investment of the money in a three-month money market index fund in the event of separation from service. (LeSueur Decl. Ex. 2 §§ 4.6 and 5.1). This is consistent with representations made to Plaintiffs before and after their termination that they would be paid their deferred compensation in full in January 2010. (Am. Cmplt. ¶¶ 12-14, 24). Defendants attempt to incorporate terms regarding vesting and forfeiture of the deferred income from the Deferred Compensation Agreement. This

- 13 -

Agreement, however, was not executed by either Campbell or Berkley and is not part of the Thales Plan. In fact, the Agreement was only presented to Campbell and Berkley in August 2008, approximately six months after they were notified of their awards.

Even if the Court were to determine that the exact nature of the Thales Plan is unclear on its face, dismissal of Plaintiffs' ERISA claims would not be appropriate at this stage of the litigation because the terms of a plan alone are not controlling. See 29 U.S.C. § 1002(2)(A) ("by its express terms *or as a result of surrounding circumstances…*") (emphasis added). "Thus, in considering whether a pension plan comes within ERISA's definition, a court examines not just what the plan says, but how the plan operates." Daft v. Advest, 2010 WL 271421, at *2 (N.D. Ohio 2010). Consequently, despite the regulation excluding bonus payments from ERISA coverage, such payments may fall within the ERISA definition of the "employee pension benefit plan" if payments are "systematically deferred to the termination of covered employments or beyond." 29 C.F.R. § 2510.3-2(c). And, federal courts have ruled that dismissal is inappropriate under Rule 12(b)(6) where there is a question of fact regarding whether a plan qualifies as an ERISA "pension plan."

For example, in Holansky v. Prudential Financial, 2004 WL 1404016, at *2 (N.D. Ill. 2004), although the compensation plan allowed participants to have the unrestricted right to the full value of their shares at the end of three years, like the Thales Plan, the plan also provided for successive extensions of the deferment. The court found that it was "premature to dismiss the ERISA claims" under Fed. Rule Civ. Pro. 12(b)(6). In so holding, the court noted:

> It is possible that the Plan is governed by ERISA, if, for example, PSI promoted the Plan as a retirement plan, its employees regularly utilized it as a retirement plan, and the three year period was meaningless because it was routine to simply grant one year extensions until retirement. Holansky is entitled to proceed on to discovery to see if he can collect evidence that would show these facts or other facts that would indicate that ERISA governed the Plan.

Id.; see also, Holzer v. Prudential Equity Group, 458 F.Supp.2d 587, 593 ("[B]ecause Holzer has alleged facts sufficient to show that the Plan provides retirement income or results in a deferral of income beyond the term of an employee's employment, and because the exact nature of the Plan is unclear on its face, at this stage of the litigation I cannot conclude that the Plan in not covered by ERISA."); Serio v. Wachovia Securities, 2007 WL 2462626, at *5-7 (D.N.J. 2007) (denying motion to dismiss where structure of plan indicated that its purpose was not designed to provide retirement income but plaintiff alleged it was promoted as retirement plan). Similarly, it would be premature to dismiss Plaintiffs' ERISA claims in the instant action. [1]

**B.    The Complaint States a Claim for Violations of ERISA**

**1.    The Complaint States a Claim under 29 U.S.C. § 1132(a)(1)(B)**

As set forth in the Complaint, Defendants violated the terms of the Plan by wrongfully denying Campbell and Berkley their deferred compensation which was due, in accordance with Sections 4.6 and 5.1, upon their separation from the company. See 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought by a participant or a beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."). A claim for recovery of benefits under ERISA § 501(a)(1)(B) can be brought against a covered plan, its administrators or trustees. See Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 509-10. All of the Defendants fall into one of these categories. (Am. Cmplt. ¶¶ 3-4). Thus, they are all proper defendants on this claim.

---

[1] If, however, the Court dismisses the ERISA causes of action, it should remand the remaining claims to state court. See Bialy v. Honeywell, 2006 WL 196378 (W.D.N.Y. Jan. 24, 2006)(remanding remaining claims to state court after dismissal of ERISA claims).

Contrary to Defendants' assertions, both the original Complaint and the Amended Complaint allege that Plaintiffs are qualified participants in the Thales Plan. (Cmplt. ¶28 & Am. Cmplt. ¶31). Moreover, Campbell and Berkley never allege that they did not rely on the Thales Plan in deferring their bonuses. Rather, the Amended Complaint clarifies when they received the Plan *documents*, as opposed to information regarding the Plan or its terms. As stated in the both the Complaint and Amended Complaint, Campbell and Berkley relied on the oral representations of Fludzinski and/or Ershov (communicated to them via Weekley) that their deferred compensation bonus "would be rolled over into a new event-driven fund that would be affiliated with Thales and operated by other members of the event-driven group" – *i.e.* the funds under the Thales Plan, which was managed by a Committee. (Cmplt. ¶12, & Am. Cmplt. ¶12-13). In the Amended Complaint, Campbell and Berkley clarify that while Rogers referred Berkley to the Plan's terms in confirming, in February and March of 2008, that their bonuses would be invested in a money-market account and would not be forfeited if they were terminated without cause, they did not actually receive the Plan documents until April 20008. (Am. Cmplt. ¶¶ 14-15, 17).

Defendants also incorrectly assert that Campbell and Berkley have failed to alleged facts showing that they were eligible to participate in the Thales Plan because the Plan required them to make the decision to defer 2007 income no later than December 31, 2006. (Def. Supp. Memo of Law at 1, 5-6). In fact, Defendants ignore the critical part of Section 4.2 governing "Compensation Eligible for Deferral," which provides that the Plan Committee "may permit Awards and other amounts to be treated as deferrals under the Plan, including deferrals that may be mandatory as determined by the Committee in its sole discretion or under the terms of another plan or arrangement of an Employer, for administrative convenience or otherwise to serve the purposes of the Plan and such other Plan or arrangement." (LeSueur Decl. Ex. 2 § 4.2). The

- 16 -

2007 bonuses awarded to Campbell and Berkley, therefore, constituted compensation eligible for deferral under this provision.

Moreover, nothing in the Thales Plan provides that Campbell and Berkley needed to still be employed by the company in order to receive their deferred bonuses.  To the contrary, the Plan anticipates the termination of a participant's employment and provides procedures governing the investment and payment of such a participant's deferred compensation. As noted previously, Section 4.6 states that "following a Participant's termination of employment for any reason" amounts in their "Deferred Compensation Account shall be deemed invested in a three month money market index fund." (LeSueur Decl. Ex. 2 §4.6) (emphasis added).  Similarly, Section 5.1 provides that "if the Participant's election results in the payment of all or a portion of the Participant's Deferred Compensation Account following the Participant's separation from service from the Employers, the Company may, notwithstanding the Participant's election, pay the Participant's Deferred Compensation Account upon the later of (i) the date or dates elected by the Participant and (ii) the first anniversary of the Participant's termination of employment."

Defendants assert that the failure of Campbell and Berkley to execute the Deferred Compensation Agreements, which Defendants only presented to Plaintiffs six months after they elected to defer their compensation in accordance with the Thales Plan at the request of the company, somehow rendered their awards forfeitable and unvested.  There is no provision in the Plan which supports this position.  Section 4.2 provides that Participants may elect to defer Awards or the Committee may permit bonus awards to be deferred for "administrative convenience." (LeSueur Decl. Ex. 2 §4.2). There is no language requiring the execution of a Deferred Compensation Plan to make an election.  Section 4.3 provides that "[o]nce a Deferred Compensation Agreement, properly completed, is received by the Committee, the elections shall

be irrevocable…" (LeSueur Decl. Ex. 2 §4.3).  The only reasonable interpretation of Section 4.3 is that once a Participant has signed such an Agreement, the participant cannot then change his mind and demand current payment.  This interpretation is especially logical given that Section 4.3 further provides for additional deferral periods. (Id.) In other words, once a participant has executed a Deferred Compensation Agreement, he can only push compensation out farther but relinquishes his right to current payment.

Section 4.5 provides for the establishment of deferred compensation accounts to credit a participant's Awards under the Plan.   (LeSueur Decl. Ex. 2 §4.5). The only reference to forfeiture in the entire Thales Plan is in the last sentence of Section 4.5 which states "a Participant shall forfeit the balance in all Deferred Compensation Accounts established for such Participant in the event that the Participant breaches, as determined by the Committee, any noncompetition, confidentiality, nonsolicitation, nondisclosure or other similar agreement to which the Participant is bound." (LeSueur Decl. Ex. 2 §4.5).

Otherwise, the plain language of Section 4.6 states that the amounts in a Participant's Deferred Compensation Account shall be deemed invested in a three-month money market index fund following termination of employment and Section 5.1 provides for the date of payment following separation from service. (LeSueur Decl. Ex. 2 §4.6, 5.1).   Although Defendants assert that the Thales Plan allows the deferred compensation accounts to contain both "vested and unvested" awards, there is no such provision in the Plan.  Because neither Campbell nor Berkley forfeited their awards under Section 4.5, in accordance with the Plan, they were entitled to their funds upon their separation from the company.

In the context of a motion to dismiss, the Court must draw all reasonable inferences in favor of Plaintiffs. See DeMuria, 328 F.3d at 706. Therefore, to the extent there is any ambiguity

- 18 -

regarding the need to execute a Deferred Compensation Agreement in order for an award to be

"vested" and not subject to forfeiture upon separation, such ambiguity must be resolved in favor

of Plaintiffs.

**2.      The Complaint States a Claim under 29 U.S.C. § 1132 (c)**

Congress' purpose in enacting the ERISA disclosure provisions was to ensure "that the

individual participant knows exactly where he stands with respect to the plan." Firestone Tire &

Rubber Co. v. Bruch, 489 U.S. 101, 118 (1989) (citation omitted).  See also Wilkins v. Mason

Tenders. Dist. Council Pension Fund, 445 F.3d 572, 580 (2d Cir. 2006) (noting "ERISA's purpose

of ensuring adequate disclosure with respect to pension and welfare plans").

ERISA § 105(a), provides in part that:

> [e]ach administrator of an employee pension benefit plan shall furnish to any
> plan participant or beneficiary who so requests in writing, a statement
> indicating, on the basis of the latest available information-(1) the total benefits
> accrued, and (2) the nonforfeitable pension benefits, if any, which have
> accrued, or the earliest dates on which benefits will become nonforfeitable.

29 U.S.C. § 1025(a)(2)(A).  Such a statement must be "calculated to be understood by the

average plan participant."  29 U.S.C. § 1025(a)(2)(A)(iii). A plan administrator who fails to

provide the statement within 30 days of a request may "be personally liable to such participant or

beneficiary in the amount of up to $100 a day from the date of such failure." 29 U.S.C. § 1132

(c)(1).  As Thales and the individual Defendants are alleged to be administrators of the Plan, they

are proper defendants to this claim. (Am. Cmplt. ¶¶ 3-4).

As alleged in the Amended Complaint, Plaintiffs demanded in writing information

regarding the balances of their deferred compensation accounts.  (Am. Cmplt. ¶¶ 23, 27-29).  The

answers provided by Defendants were opaque and inaccurate stating, contrary to the terms of the

Thales Plan as discussed above, that Plaintiffs had forfeited their awards.  Such statements by

Defendants were in violation of 29 U.S.C. § 1025(a)(2)(A).  Therefore, Plaintiffs have stated a claim for damages under 29 U.S.C. § 1132 (c)(1).

## II.    Plaintiffs' Breach of Contract Causes of Action Should Not be Dismissed

Defendants claim that Campbell and Berkley fail to allege the elements of a breach-of-contract claim.  (Def. Supp. Memo of Law at 7).  This assertion ignores the fact that in the Third Count of the Amended Complaint Plaintiffs, in accordance with standard practice in pleadings, specifically "repeat and reallege the allegations set forth above as though set forth herein at length." (Am. Cmplt. ¶ 40).  The Amended Complaint, set forth in chronological order, alleges that in February 2008, Campbell agreed to defer his entire 2007 bonus and Berkley agreed to defer one-half of his 2007 bonus, and Thales agreed to roll the bonus compensation into a new event-driven fund and pay it on January 1, 2010, or sooner in accordance with the terms of the Thales Plan should they be terminated without cause prior to that date.  (Am. Cmplt. ¶¶ 12-14).  As stated in the Amended Complaint, the parties also agreed that the deferred compensation would only be forfeited if Plaintiffs voluntarily terminated their own employment before January 1, 2010. (Amend. Cmplt. ¶13).  The Amended Complaint also alleges that while Plaintiffs performed their obligations under the contract by deferring their bonuses, Thales breached the contract when it failed to pay Plaintiffs the deferred compensation due them after the termination of their employment, and the Plaintiffs were damaged as a result of this breach. (Amend. Cmplt. ¶¶ 12-13, 23-25, 27-29, 41).  Plaintiffs, therefore, have clearly stated a claim for breach of contract.  See Reuben H. Donnelly Corp. v. Mark I Marketing Corp., 893 F. Supp 285, 290 (S.D.N.Y. 1995) (holding that to state a claim for breach of contract under New York law, a party must allege the existence of an agreement, due performance by the party alleging the breach, a breach and damages resulting from the breach).

- 20 -

Further, the contract is not barred by the Statute of Frauds because, by its own terms, it is terminable within one year. See Rackson v. Sosin, 14 Fed. Appx. 23, 24-25 (2d Cir. 2001) ("[T]he New York Court of Appeals has stated that a contract that is by its own terms terminable within one year is not governed by the Statute of Frauds."). "[I]f the terms of [a] contract include an event that might end the contractual relationship within a year, the contract is not within the Statute of Frauds." Id. (citing Cron v. Hargo Fabrics, Inc., 91 N.Y.2d 362, 370 (1998)). Here, if Plaintiffs voluntarily terminated their own employment before January 1, 2010, they would have forfeited their deferred compensation. (Amend. Cmplt. ¶13). This was an event that would end the contractual relationship and was possible of occurring within a year of February 2008.

In Cron, 91 N.Y.2d at 367-370, the New York Court of Appeals held that an oral agreement in an employment-at-will situation, under which an employer was obligated to pay an employee a bonus equal to 20% of the company's annual pretax profits, did not fall within the one-year proscription of the Statute of Frauds, even if the employee's bonus had to be calculated and, therefore, paid after the passage of a year. The court held that "when the employment relationship is terminable within a year and the measure of compensation has become fixed and earned during the same period, the sole obligation to calculate such compensation will not bring the contract within the one-year proscription of the Statute of Frauds." Id. at 370. The court specifically stated that if the employment relationship is terminable within a year, like the employment relationship between Plaintiffs and Thales, "we see no reason to conclude that the Statute of Frauds should prevent enforcement of the parties' alleged agreement *when all that remains of the employment relationship is an obligation to pay the employee's compensation which has been earned and fixed within the year.*" Id. at 371 (emphasis added). The holding in Weisse v. Engelhard Minerals & Chemicals, 571 F.2d 117, 118, 118 n.1 (2d Cir. 1978), the only

- 21 -

case cited by Defendants as authority for their Statute of Frauds argument, is not applicable to the instant action because in that case, the plaintiff alleged that his agreement was for permanent employment, an allegation the court accepted as true for the purpose of deciding the motion for summary judgment.

In addition, the contract claim should not be deemed barred by the Statute of Frauds because there are writings reflecting the bonuses, including the unexecuted Deferred Compensation Agreements and the W-2 tax forms issued by Thales to Plaintiffs, and discovery may reveal the existence of other such writings.

Plaintiffs have pled the Second Count of Breach of the Deferred Compensation Agreement, in the alternative, solely in the event that the Court finds the language of that agreement binding on Plaintiffs despite the fact that they never signed it.

**III.    Plaintiffs' Promissory Estoppel Claims Should Not be Dismissed**

Defendants' argument that Fludzinski, Ershov and Rogers are improper parties to the promissory estoppel claim is baseless because the Fourth Count of the Amended Complaint is asserted against Thales only. Defendants' further argument that Plaintiffs failed to allege reliance "because they allege that the deferrals were mandatory" is also without merit. (Def. Suppl. Memo of Law at 8). The Amended Complaint never uses the term "mandatory" but, rather, states that Thales "forced" and "insisted" that Campbell and Berkley defer their bonuses. (Am. Complt. ¶10). The use of these phrases was artful pleading intended to reflect the strong-arm tactics used by Thales in its negotiations with Plaintiffs, but does not mean that the deferrals were mandatory.

The fact that Berkley deferred only one-half of his bonus shows that the deferrals, in fact, were voluntary and, as alleged in the Amended Complaint, were made in reliance upon the

Defendants' promise that Thales would pay the deferred compensation on January 1, 2010,

unless Plaintiffs voluntarily terminated their own employment. (Am. Cmplt. ¶10-13). It was

reasonable for Plaintiffs to rely on this promise as it was consistent with the terms of the Thales

Plan; Plaintiffs obviously were injured by relying on Defendants' promises of future payment

when they could have insisted upon immediate payment in full of their bonuses. Therefore,

Plaintiffs have alleged all of the elements of promissory estoppel – "a clear and unambiguous

promise, a reasonable and foreseeable reliance by the party to whom the promise is made, and an

injury by the party asserting the estoppels by reason of his reliance." RG Group Inc. v. Horn &

Hardart Co., 751 F.2d 69, 78 (2d Cir. 1984).

## IV.    Plaintiffs' Negligent Misrepresentation and Fraud Claims Should Not be Dismissed

In asserting that Plaintiffs have failed to plead fraud and negligent misrepresentation with

the requisite particularity, Defendants again ignore that, in accordance with standard practice,

Plaintiffs incorporate the body of the Amended Complaint in the Fifth and Sixth Counts. The

Amended Complaint specifically identifies that, in early 2008, Fludzinski told Weekley (in the

presence of Shaaban) that the deferred bonus compensation would be rolled over into a new

event-driven fund that would be affiliated with Thales and operated by the other members of the

event-driven group.  (Am. Cmplt. ¶ 12).  The Amended Complaint further specifically alleges

that at the time Campbell and Berkley deferred their compensation, Weekley, based upon the

representations of Fludzinski and/or Ershov, advised them that the bonuses would only be

forfeited if they voluntarily terminated their own employment. (Am. Cmplt. ¶ 13).  The Amended

Complaint also alleges that, in February 2008, Berkley confirmed with Rogers that his deferred

compensation would not be forfeited and would be invested in a money market account, and be

payable on January 1, 2010.  (Am. Cmplt. ¶ 14).  Plaintiffs further allege that, in March 2008,

Berkley again asked Rogers where his deferred compensation would be invested and, after checking with Fludzinski and Ershov, Rogers responded that it would be invested in a money market account. (Am. Cmplt. ¶ 15). While the "place" where each of these statements was made is not specifically referred to in each individual paragraph of the Amended Complaint, it is reasonable to infer (if not patently obvious) that all of these conversations occurred in the workplace, which is specifically identified in the Amended Complaint. (Am. Cmplt. ¶ 3).

These false and fraudulent misrepresentations were more than mere "expressions of opinion" but specific promises upon which Plaintiffs relied as explained above.   Nor was Plaintiffs' reliance on Defendants' promises "unreasonable." (Def. Memo of Law at 22-23; Def. Suppl. Memo of Law at 9).   Defendants make this assertion based on their conclusion that the Thales Plan "flatly contradicted" the Defendants' false promises to Plaintiffs.  As noted previously, Section 4.6 states that "following a Participant's termination of employment for any reason" amounts in their "Deferred Compensation Account shall be deemed invested in a three month money market index fund" and Section 5.1 provides for the date of payment following separation from service. (LeSueur Decl. Ex. 2 §4.6, 5.1).  In any event, "reasonableness" is a question of fact and, as such, if there is any ambiguity regarding the Plan's terms, such ambiguity must be resolved in favor of Plaintiffs on a motion to dismiss. See DeMuria, 328 F.3d at 706.

## V.   Plaintiffs' Conspiracy Allegations Should Not be Dismissed

While Defendants correctly point out that there is no common law cause of action for civil conspiracy under New York law, "a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme." Briarpatch Ltd., LP v. Pate, 81 F.

Supp. 2d 509, 516 (S.D.N.Y. 2000).  Therefore, Plaintiffs have properly alleged a conspiracy in order to tie each Defendant to each actionable tort that has been alleged.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety.

**HARTMANN DOHERTY ROSA**
**BERMAN & BULBULIA, LLC**
110 Wall Street, 11th Floor
New York, New York  10005
*Attorneys for Plaintiff*


By:  /s/ Paul S. Doherty, III
          Paul S. Doherty, III
          Michele A. Smith

Dated: New York, NY
          August 23, 2010