```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
PETER CAMPBELL and MICHAEL BERKLEY,   :
                                      :
                Plaintiffs,           :
                                      :
          -v-                         :    10 Civ. 3177 (JSR)
                                      :
THALES FUND MANAGEMENT, LLC, THALES   :    MEMORANDUM
FUND MANAGEMENT, LLC DEFERRED         :
COMPENSATION PLAN, MAREK FLUDZINSKI,  :
KEVIN ERSHOV, and MOLLY ROGERS,       :
                                      :
                Defendants.           :
------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/12/10
```

In this action, plaintiffs Peter Campbell and Michael Berkley allege that their former employer, Thales Fund Management, LLC ("Thales"), and its principals wrongfully refused to pay them certain amounts of deferred bonus compensation following their termination. Based on these allegations, plaintiffs' amended complaint asserts seven causes of action for, respectively, (1) violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., (2) breach of "Deferred Compensation Agreements" allegedly presented to the plaintiffs but never executed by them, (3) breach of contract arising from other agreements between plaintiffs and Thales, (4) promissory estoppel, (5) negligent misrepresentation, (6) fraud, and (7) common law conspiracy. The defendants moved to dismiss this complaint in its entirety. By Order dated September 18, 2010, the Court granted the motion in part and dismissed with prejudice the Second, Fifth, Sixth, and Seventh Counts of the amended

complaint, but denied the motion as to the First, Third, and Fourth Counts. This Memorandum provides the reasons for those rulings.

The Amended Complaint alleges the following. Plaintiffs Campbell and Berkley, who are residents of, respectively, Wyckoff, New Jersey and New York City, became employees of Thales, a New York City-based hedge fund, in or about 2007. Amended Compl. ¶¶ 1-2, 7. The plaintiffs worked in Thales' "event-driven trading group" and were supervised by Tom Weekley, who in turn reported to defendant Marek Fludzinski, Thales' founder and CEO. Id. ¶¶ 4, 7. Because of the event-driven trading group's profitability in 2007, the members of that group were eligible for substantial bonus compensation. Id. ¶ 8. In early 2008, in compensation for their work done in 2007, Campbell received a bonus of $300,000 and Berkley received a bonus of $400,000. Id. ¶ 9.

By early 2008, however, Thales had begun to struggle financially. Plaintiffs allege that as a result of its financial difficulties and investors' redemption demands, Thales "insisted" that Campbell defer receipt of at least two-thirds of his 2007 bonus and that Berkley defer one-half of his. Id. ¶ 10. In response, Campbell deferred his entire bonus and Berkley deferred half of his, allegedly in reliance on Fludzinski's promise -- conveyed to plaintiffs through Weekley -- that deferred compensation would be rolled over into a new event-driven fund that the plaintiffs would help operate. Id. ¶ 12. Contemporaneously with the plaintiffs'

2

deferral of their bonus compensation, Weekley advised them that Thales would pay the deferred amounts on January 1, 2010, and that these amounts would be forfeited only if the plaintiffs voluntarily terminated their employment before that date. The plaintiffs allege "[u]pon information and belief" that Weekley made these promises based on representations made to him by Fludzinski and/or defendant Kevin Ershov, Thales' Chief Investment Officer. Id. ¶ 4, 13. Additionally, in or about February 2008, Berkley "confirmed" with defendant Molly Rogers, Thales' Director of Administration, that he would not forfeit his deferred compensation even if he were terminated without cause before January 1, 2010; rather, in that circumstance, the funds would be invested in a money market account and still payable on that date. Rogers referred Berkeley to Thales' Deferred Compensation Plan (the "Plan"), which provided for this treatment. Id. ¶ 14. According to the amended complaint, Thales did not provide the plaintiffs with the actual Plan documents until about April 2008. Id. ¶ 17.[1]

---

[1] In their initial complaint, the plaintiffs alleged that in electing to defer their bonuses, they relied in part on Plan documents that were provided to them. See Compl. ¶ 12. The amended complaint, by contrast, alleges that they did not receive the Plan documents until April 2008, and the defendants contend that such allegations are "blatantly contrary" to the original complaint and accordingly should be disregarded. But no legal doctrine prevent a party from amending a pleading at this stage (prior to any judicial reliance) to allege facts that are contrary to those originally alleged; at most, it provides a basis for potential impeachment of plaintiffs if the case goes to trial. Moreover, plaintiffs assert that the claim is simply a clarification that in February 2008, plaintiffs allegedly decided

Thales closed the event-driven trading group in or about March 2008, whereupon Berkley asked Rogers where his deferred bonus would be invested. After checking with Fludzinski and Ershov, Rogers reported that the bonus would be invested in a money market account until it could be placed in a new fund to be operated by plaintiffs. Berkley passed this information to Campbell, who also allegedly relied on these statements. Id. ¶ 15.

After the event-driven trading group was closed, the plaintiffs remained employed by Thales, but Thales never started a new fund to be operated by plaintiffs. Id. ¶ 16. In August 2008, Thales presented the plaintiffs with identical "Deferred Compensation Agreements." Id. ¶ 18. These agreements, however, were never executed. Id.

Thales' financial troubles worsened in early 2009. Id. ¶ 19. Accordingly, the plaintiffs began demanding additional assurances and information regarding the status of their deferred bonuses. Id. ¶ 19. Instead, Thales terminated plaintiffs without cause on June 22, 2009; plaintiffs allege that this termination was in retaliation for their demands. Id. ¶ 20. Following termination, Campbell made several requests of Rogers as to the status of his deferred compensation, and Rogers responded by advising that she would provide this information following an audit. Id. ¶¶ 21-22. In response to a

---

to defer their bonuses in part based on the defendants' oral representations as to the Plan's provisions, rather than the Plan documents themselves.

4

December 2009 e-mail from Campbell, however, Rogers stated:

> In reviewing the relevant documents, the Deferred Compensation Committee has determined that the terms of the award were made clear to you at the time of the grant. The vesting was subject to your continued employment on January 1, 2010 and the award was therefore forfeited upon termination of employment.

Id. ¶ 23. Plaintiffs allege that this determination was contrary both to Rogers' earlier assurances that their deferred compensation would be paid in full and to the terms of the Plan itself. Id. ¶¶ 24-25. Rogers sent Berkley an identical e-mail on December 9, 2009, after she had responded to his earlier requests for information by stating that she would provide such information after completion of an audit, but not taking the position that Berkley forfeited the right to receive his deferred compensation upon termination. Id. ¶¶ 26-29.

In response to these allegations, defendants first move to dismiss the complaint on the ground that the plaintiffs have failed to allege the existence of an ERISA plan, which they must do in order to provide a basis for federal jurisdiction over this case. ERISA defines the terms "employee pension benefit plan" and "pension plan" as: "any plan, fund, or program . . . to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond . . . ." 29 U.S.C. § 1002(2)(A). Regulations further provide that these terms "shall not

5

include payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment or beyond, or so as to provide retirement income to employees." 29 C.F.R. § 2510.3-2(c). Based on these definitions, the defendants assert that the Thales Plan was a bonus plan intended to provide incentive compensation to current employees and that any option to defer compensation until retirement was merely incidental to this primary purpose.

While defendants' contentions in this regard are not without some force, they are ultimately insufficient to warrant dismissal for failure to state a claim. First, as the defendants concede, the Thales Plan permits the deferral of compensation until retirement in some circumstances. See Decl. of Carl D. LeSueur, 6/17/10 ("LeSueur Decl."), Ex. 2 (Plan), § 5.1 (providing that subject to certain limitations, a plan participant may select the date upon which her deferred compensation will be paid and that this date may result in payments following the participant's separation from service); id. § 4.3 (permitting participants to in some circumstances elect an additional deferral period of at least five years that can result in payments following separation from service); id. § 4.6 (providing that amounts in a participant's Deferred Compensation Account shall be "deemed invested" in a money market index fund "following a Participant's termination of employment for any reason"). Moreover,

6

the Plan's introductory paragraph plainly states that "It is intended that the Plan constitute an unfunded 'top hat plan' for purposes of [ERISA}." Id. art. 1. An ERISA "top hat plan" has been defined to mean "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees"; and while such plans are excepted from certain ERISA requirements, they are not exempt from its "administration and enforcement provisions." Demery v. Extebank Deferred Compensation Plan (B), 216 F.3d 283, 286-87 (2d Cir. 2000) (internal quotation marks omitted).

The foregoing aspects of the Plan are sufficient to allow plaintiffs' ERISA claim to proceed to discovery. While the defendants identify some district court cases that have disregarded a plan's mere incidental effect of permitting post-retirement payment of deferred compensation in some circumstances when the goal of the plan is clearly to provide current compensation, even those decisions have recognized that a plan's stated purpose is a factor relevant to this determination. See, e.g., Hahn v. Nat'l Bank, N.A., 99 F. Supp. 2d 275, 279 (E.D.N.Y. 2000) (holding that plan's "express statement of purpose . . . is entitled to weight when determining the nature of the plan"); Int'l Paper Co. v. Suwyn, 978 F. Supp. 506, 511 (S.D.N.Y. 1997). Here, the plaintiffs have alleged that the Plan by its terms permits compensation to be deferred until retirement, and the Plan expressly states that its purpose is to be subject to the

provisions of ERISA that would establish federal jurisdiction. Given that the statute permits inquiry into the operation of the plan "as a result of surrounding circumstances," these factors provide sufficient reason to deny the motion to dismiss the ERISA claim on jurisdictional grounds. See, e.g., Holzer v. Prudential Equity Group LLC, 458 F. Supp. 2d 587, 593 (N.D. Ill. 2006) ("because [plaintiff] has alleged facts sufficient to show that the Plan provides retirement income or results in a deferral of income beyond the term of an employee's employment, and because the exact nature of the Plan is unclear on its face, at this stage of the litigation I cannot conclude that the Plan is not covered by ERISA").

Next, the defendants argue that even assuming the plaintiffs have sufficiently pleaded the jurisdictional aspect of their ERISA claim, they fail to state a claim for any violation of ERISA because defendants' treatment of plaintiffs' compensation was consistent with the terms of the Plan. In this regard, the defendants contend that the plaintiffs failed to make their election to defer their bonus compensation by the deadline set forth in the plan, which, they argue, was December 31, 2006. See Plan §§ 2.12, 4.1, 4.2 (providing in part that "a Participant may elect to defer Awards with respect to [a] Fiscal Year" if he so elects "on or before the Election Date," which is defined to be no later than the day before the first day of that fiscal year). Additionally, the defendants refer to section 4.3 of the Plan, which provides that once a properly completed Deferred

8

Compensation Agreement is received by the Plan Committee, "the elections of the Participant shall become irrevocable."[2]

While the defendants' arguments in this regard are arguably not foreclosed by the terms of the Plan, the plaintiffs have offered a competing interpretation that is more than plausible. First, while section 4.2 of the Plan does set forth a requirement that certain deferral elections be made on or before the Election date, the same section also provides that the Plan Committee "may permit Awards and other amounts to be treated as deferrals under the Plan, including deferrals that may be mandatory as determined by the Committee in its sole discretion or under the terms of another plan or arrangement of an Employer, for administrative convenience or otherwise to serve the purposes of the Plan and such other Plan or arrangement." Plaintiffs contend that the defendants' demand for deferrals of their 2007 bonuses falls under this provision, and the Court agrees, at least for purposes of evaluating this motion. Next, while section 4.3 states that a properly completed Deferred Compensation Agreement is necessary to make a participant's election irrevocable, there is no indication anywhere in the Plan that revocable deferrals must be

---

[2] The defendants also rely on provisions of the Deferred Compensation Agreements presented to the plaintiffs that relate to the vesting of the bonuses and provide that upon termination unvested portions shall be forfeited. See LeSueur Decl., Exs. 3 & 4. However, the plaintiffs allege that these agreements were never executed, and defendants provide no reason why the terms of these unexecuted agreements are of any relevance to the question of whether they violated the Plan.

9

forfeited upon termination. Indeed, the only reference to forfeiture in the Plan appears in section 4.5, which provides for forfeiture of the balance of the deferred compensation amount in the event that the participant breaches a "noncompetition, confidentiality, nonsolicitation, nondisclosure or other similar agreement." For these reasons, taking all inferences in the light most favorable to the plaintiffs, the Court concludes that they have stated a claim under 29 U.S.C. § 1132(a)(1)(B) that the defendants violated the terms of the Plan.

The plaintiffs also allege that the defendants violated ERISA's disclosure provisions, see 29 U.S.C. § 1132(c). The defendants move to dismiss this count as well, arguing that the plaintiffs have not pleaded with specificity what information was requested, to whom the request was made, and how plaintiffs were harmed as a result. In the Court's view, however, the amended complaint pleads with adequate specificity both that Rogers provided opaque and misleading answers in response to plaintiffs' written inquiries regarding their account balances and that the defendants' eventual determination that plaintiffs forfeited their award was wrongful. Accordingly, the plaintiffs have stated a claim for damages under 29 U.S.C. § 1132(c)(1).

Apart from their arguments directed at the ERISA claim, the defendants also move to dismiss each of plaintiffs' state-law claims. To begin with, they move to dismiss the Second Count, which is for

breach of the Deferred Compensation Agreements, primarily on the ground that plaintiffs have failed to allege the existence of a contract. Indeed, the plaintiffs specifically allege that these agreements were never executed. Because a defendant cannot breach an agreement that the plaintiffs concede they never even agreed to, the Court dismisses this count.

The defendants also move to dismiss the Third Count, which is for "breach of contract" with respect to the various oral promises alleged in the body of the amended complaint based on Thales' failure to pay the plaintiffs their deferred bonuses on January 1, 2010. The defendants assert this claim should be dismissed because the alleged agreement is unenforceable under New York's statute of frauds, see N.Y. Gen. Oblig. Law § 5-701, in that it could not be performed within a year. The plaintiffs have alleged, however, that the parties agreed that the deferred compensation would be forfeited if the plaintiffs voluntarily terminated their employment before January 1, 2010. Amended Compl. ¶ 13. Thus, because this agreement by its terms was terminable within one year, it is not barred by the statute of frauds. See, e.g., Cron v. Hargo Fabrics, Inc., 91 N.Y.2d 362, 371 (1998).

The Fourth Count in the Amended Complaint is for promissory estoppel arising from plaintiffs' reliance on these same alleged oral promises. The defendants move to dismiss this claim on the basis that plaintiffs' deferrals were mandatory, so there could be no

reliance. As plaintiffs point out, however, the amended complaint is careful to avoid pleading that these deferrals were "mandatory"; it instead alleges that Thales "forced" and "insisted" that the plaintiffs defer their bonuses. See Amended Compl. ¶ 10. In addition, the allegation that Campbell deferred his entire bonus in response to Thales' insistence that he defer at least two-thirds of that bonus is a further indication that the amounts of the deferrals were to some extent voluntary.

Alternatively, the defendants argue that the plaintiffs cannot demonstrate reasonable reliance on the alleged promises because these assurances about the treatment of deferred compensation were at odds with the provisions of the Plan. This argument is unavailing. For one thing, the amended complaint alleges that the plaintiffs did not receive the Plan documents until April 2008, after certain of the alleged promises were made. And, in any case, as discussed above, the terms of the Plan, when read in the light most favorable to the plaintiffs, are consistent with the alleged oral representations as to how the plan would operate. For these reasons, the Court concludes that the plaintiffs have sufficiently pleaded reasonable reliance.

In the Fifth and Sixth Counts, the plaintiffs allege that the various defendants made negligent and fraudulent representations regarding their bonus compensation, and refer in particular to alleged promises that the deferred bonus compensation would be rolled

over into a new fund that plaintiffs would operate or, alternatively, would be invested in a money market account, and also that the deferred compensation would be forfeited only if plaintiffs voluntarily terminated their employment before January 1, 2010. But as defendants argue, these claims are deficient on multiple grounds.

First, insofar as plaintiffs rely on statements allegedly made by Rogers in February and March 2008, see Amended Compl. ¶¶ 14-15, these statements were made after the plaintiffs decided to defer their bonuses and accordingly cannot support a fraud or negligent misrepresentation claim. This leaves the alleged February 2008 representations uttered by Weekley, allegedly acting on behalf of Fludzinski and/or Ershov, regarding the timing of the deferred compensation payments and the manner in which the funds would be invested. Id. ¶¶ 12-13. There are no non-conclusory allegations in the amended complaint, however, that could support the inference that these defendants were acting with fraudulent intent or even that these alleged misrepresentations were made negligently. While it is possible that Fludzinski and/or Ershov knowingly lied to Weekley -- and, indirectly, to the plaintiffs -- about the nature of these deferrals, a far more plausible inference is that the defendants' alleged change in position with respect to the payment of the awards was a result of deteriorating economic conditions and Thales' financial troubles after February 2008, see id. ¶¶ 10, 19. Though plaintiffs need not plead scienter "with great specificity,"

13

"plaintiffs are still required to plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990). Here, there are no factual allegations that suggest any such inference of fraudulent intent, and for that reason alone, the fraud claim must be dismissed.

The fraud and negligent misrepresentation claims also suffer from another fundamental defect: these claims, which reduce to allegations that the defendants made promises about the deferred compensation while lacking the present intent to perform those promises, are impermissibly duplicative of the claim for breach of contract. See, e.g., Guilbert v. Gardner, 480 F.3d 140, 148 (2d Cir. 2007) (holding that fraud claim based on allegations that "defendants told [plaintiff] 'on numerous occasions' that the pension had been 'taken care of' when, in fact, defendants knew this to be false" was duplicative of contract claim); Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 19 (2d Cir. 1996) (holding that a defendant's intentionally false statements of intent to perform under a contract are "not sufficient to support a claim of fraud under New York law"); accord Manas v. VMS Assocs., LLC, 53 A.D.3d 451, 453-54 (1st Dep't 2008). Similarly, "[p]romises of future conduct are not actionable as negligent misrepresentations." Murray v. Xerox Corp., 811 F.2d 118, 123 (2d Cir. 1987); see also Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187-88 (2d Cir. 2004) ("As in the case of fraud, an

14

alleged misrepresentation must be factual and not 'promissory or related to future events.'").

Finally, in the Seventh Count of the amended complaint, plaintiffs aver that the defendants conspired together to commit the allegedly wrongful acts. Their sole relevant allegation in this respect reads as follows: "Defendants conspired to commit the wrongful acts detailed above in order to unjustly enrich themselves at the expense of Plaintiffs." Amended Compl. ¶ 61. Because this allegation is wholly conclusory, it cannot serve as a basis for invoking the doctrine of civil conspiracy under New York law. See, e.g., Schwartz v. Soc'y of New York Hosp., 199 A.D.2d 129, 130 (1st Dep't 1993) ("more than a conclusory allegation of conspiracy or common purpose is required").

For the foregoing reasons, the Court, by Order dated September 18, 2010, dismissed the Second, Fifth, Sixth, and Seventh Counts but otherwise denied the motion to dismiss. Moreover, because the defects in the dismissed counts were substantive and could not be cured by leave to replead, and because plaintiffs had already amended their complaint and made no request for further leave to amend, those dismissals were with prejudice.

Dated: New York, NY
October 12, 2010

JED S. RAKOFF, U.S.D.J.